UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
GEORGE EMAD WADIE HABIB,

              Petitioner,

          -against-

RAUL MALDONADO JR. *et al.*,

            Respondents.
-------------------------------------------------------------------x

**MEMORANDUM AND ORDER**
26-CV-2038 (OEM)

ORELIA E. MERCHANT, United States District Judge:

On April 6, 2026, Petitioner George Emad Wadie Habib ("Petitioner") filed a petition for writ of habeas corpus against Respondents Raul Maldonado, Jr., in his official capacity as Warden of the Metropolitan Detention Center in Brooklyn, New York ("MDC Brooklyn"); Todd Lyons, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement ("ICE"); Judith Almodovar, in her official capacity as Acting Field Office Director of ICE Enforcement and Removal Operations in the New York City Field Office; Markwayne Mullin, in his official capacity as Secretary of the U.S. Department of Homeland Security ("DHS"); and Todd Blanche, in his official capacity as Acting Attorney General of the United States (collectively, "Respondents"). *See generally* Petition for Writ of Habeas, Dkt. 1 ("Petition" or "Pet."). Petitioner seeks his immediate release or, alternatively, a new bond hearing and challenges the lawfulness of his ongoing detention by ICE under the Immigration and Nationality Act ("INA") and the Fifth Amendment of the U.S. Constitution ("Fifth Amendment"). *Id.* at 14-15; *id.* ¶¶ 38-65. Petitioner was arrested by ICE on March 19, 2026, and is currently detained at MDC Brooklyn. *Id.* ¶¶ 15, 17.

For the following reasons, Petitioner's request for a new bond hearing is granted.

## BACKGROUND

On or about December 11, 2023, Petitioner, an Egyptian citizen, "was admitted to the United States as a nonimmigrant Visitor for Pleasure pursuant to a B2 visa with authorization to remain in the United States for a temporary period not to exceed June 10, 2024." Memorandum of Law in Response to Order to Show Cause at 3, Dkt 10 ("Opposition" or "Opp'n"); *see id.* at 1; Pet. ¶ 13. "Petitioner resided in Staten Island, New York, and was employed by the New York City Department of Environmental Protection as an engineer." Pet. ¶ 19. He remained in the United States beyond the expiration date of his authorized stay. Opp'n at 3; Pet. ¶ 14.

While Petitioner has "no history of violent criminal conduct," Pet. ¶ 21, he was arrested by the New York Police Department on February 8, 2025, for driving under the influence, Opp'n at 3. On July 1, 2025, after pleading guilty, Petitioner was convicted of driving while impaired by the consumption of alcohol, an infraction of the New York traffic laws; he was required to attend "an impaired driver program and a victim impact panel" and pay "a fine of $300," and his driver's license was suspended for 90 days. Opp'n at 4.

On March 19, 2026, ICE officers arrested Petitioner when encountering him "at 1065 Stewart Avenue, Bethpage, New York, after Petitioner reported to an interview at the USCIS office in the same location." *Id.*; Record of Deportable/Inadmissible Alien at 2, Dkt. 13-2. After confirming Petitioner's identity, ICE officers "took [him] into custody pursuant to [a] Form I-200, Warrant for the Arrest of Alien, under [INA] Section 236(a), 8 USC § 1226(a). ICE also served Petitioner with a Form I-862, Notice to Appear." Opp'n at 4 (citations omitted). ICE additionally served Petitioner with a "Notice of Custody Determination" and informed him "of his right to request a review of his custody determination by an immigration judge." *Id.* Petitioner indicated his intent to request such a review by checking a box on the Notice of Custody Determination and that same day ICE commenced removal proceedings against him. *Id.* at 4-5.

On April 2, 2026, an Immigration Judge ("IJ") held a hearing and denied Petitioner bond, *id.* at 5; Pet. ¶¶ 23-24, concluding that Petitioner had not met his burden of establishing that he does not pose a danger to the community, *see* Opp'n, Exhibit A at 8:22-24, Dkt. 10-2 ("I'm not persuaded by the record that the Respondent has established that he does not pose a danger to the community. So I'm denying bond on that ground."). After doing so, the IJ advised Petitioner that he could appeal the decision by filing a Notice of Appeal with the Board of Immigration Appeals ("BIA") by May 4, 2026. Opp'n, Exhibit A at 8:24-25, Dkt. 10-2. Instead, Petitioner commenced the instant action. Pet. ¶¶ 66-75.

"Petitioner's removal proceedings remain pending, and no final order of removal has been entered." *Id.* ¶ 25.

Petitioner is currently detained at MDC Brooklyn, where he remains today. *Id.* ¶ 17.

## DISCUSSION

The Petition raises three principal issues: (1) whether this Court has subject-matter jurisdiction; (2) whether Petitioner must exhaust his administrative remedies; and (3) whether ICE's detention of Petitioner violates his due process rights.

### A. Subject-Matter Jurisdiction

Respondents first argue that this Court lacks subject-matter jurisdiction to hear this Petition because "in essence" Petitioner presents "a disagreement with the IJ's weighing of the evidence." Opp'n at 7. While not directly responding to this argument, *see generally* Reply in Support re 1 Petition for Writ of Habeas Corpus, Dkt. 11; Reply in Support re 1 Petition for Writ of Habeas Corpus, Dkt. 12, Petitioner contends both that the IJ required him to carry the burden of proof as to whether he was a flight risk or dangerous and that the IJ "did not meaningfully engage with the

substantial evidence presented by Petitioner demonstrating that he is neither a danger to the community nor a flight risk," Pet. ¶¶ 44-45.

As Respondents note, *see* Opp'n at 6-7, 8 U.S.C. § 1226(e) "specifically divests [district courts] of jurisdiction to review the decisions of the IJ and the BIA (acting on behalf of the Attorney General) regarding detention of aliens under Section 1226." *Hamilton v. Shanahan*, 09 Civ. 6869 (SAS), 2009 WL 5173927, at *3 (S.D.N.Y. Dec. 30, 2009); *see also Arevalo-Guasco v. Dubois*, 788 F. App'x 25, 27 (2d Cir. 2019) (concluding that 8 U.S.C. § 1226(e) "precludes judicial review of the IJ's weighing of evidence and factual findings regarding whether [Petitioner-Appellant] is a danger to the community"). However, Respondents simultaneously recognize that "[c]ourts may nonetheless exercise jurisdiction over questions of law or constitutional challenges to the application of § 1226." Opp'n at 7 (quoting *Lantigua v. Decker*, 17 Civ. 4880 (LGS), 2017 WL 5054567, at *2 (S.D.N.Y. Oct. 27, 2017) (citations omitted)). Here, Petitioner challenges both the process that was afforded to him under 8 U.S.C. § 1226, *see* Pet. ¶¶ 38-65, and the IJ's factual determination of Petitioner's "dangerousness based on a non-violent, traffic-related offense," *id.* ¶ 46; *see also Lantigua*, 2017 WL 5054567, at *2 ("In assessing whether a petitioner raises a question of law or a constitutional challenge, a petitioner's arguments are assessed 'regardless of the rhetoric employed in the petition.'" (quoting *Barco-Sandoval v. Gonzales*, 516 F.3d 35, 42 (2d Cir. 2008))). While the Court agrees that it may not review the IJ's factual findings, *Lantigua*, 2017 WL 5054567, at *2, it does find that the process question is constitutional in nature, *see Velasco Lopez v. Decker*, 978 F.3d 842, 851, 853-54 (2d Cir. 2020). Therefore, the Court determines that it has subject-matter jurisdiction over that constitutional aspect of the Petition.

**B. Administrative Exhaustion**

Respondents next urge this Court to deny the Petition because "Petitioner has not exhausted administrative remedies – *i.e.*, an appeal to the BIA." Opp'n at 9. Respondents emphasize that "Petitioner's deadline to appeal the April 2, 2026 bond decision to the BIA is May 4, 2026, yet he filed this action before even attempting to utilize that administrative remedy." *Id.* In opposition, Petitioner asserts that exhaustion is "prudential, rather than jurisdictional," in nature, Pet. ¶ 68, and that requiring exhaustion here is not warranted because the BIA "is not equipped to provide adequate relief" for his claims, *id.* ¶ 70, and Petitioner would be irreparably harmed by his continued detention, *id.* ¶ 73.

Courts generally require "administrative exhaustion before immigration detention may be challenged in federal court by a writ of habeas corpus." *Quintanilla v. Decker*, 21 Civ. 417 (GBD), 2021 WL 707062, at *2 (S.D.N.Y. Feb. 22, 2021) (quoting *Joseph v. Decker*, 18-CV-2640 (RA), 2018 WL 6075067, at *5 (S.D.N.Y. Nov. 21, 2018)). However, exhaustion is a "prudential matter," not a "statutory requirement." *Id.* Indeed, courts in this Circuit have excused exhaustion when "(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question." *Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003).

Here, waiver of the exhaustion requirement is warranted as the Petition raises a substantial constitutional question that cannot properly be adjudicated administratively. Petitioner contends that his continued detention under 8 U.S.C. § 1226(a) without DHS making the requisite individualized determination constitutes a violation of his due process rights. Pet. ¶¶ 28-65. Neither an immigration judge nor the BIA is positioned to properly adjudicate such a claim. *See*

*Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 497-98 (S.D.N.Y. 2025); *Valdez v. Joyce*, 803 F. Supp. 3d 213, 215 n.1 (S.D.N.Y. 2025) ("Petitioner has raised a constitutional question that could not be properly addressed by the Immigration Judge or Board of Immigration Appeals."). This issue differs from the "procedural defects" identified in *United States v. Gonzalez-Roque*, 301 F.3d 39, 47-48 (2d Cir. 2002) (characterizing the issues as "whether the INS erred in failing to locate the I–130 form and whether the IJ abused his discretion by refusing to adjourn the proceedings to consider it"), upon which Respondents rely, *see* Opp'n at 10. In fact, that case specifically acknowledges that "constitutional claims lie outside the BIA's jurisdiction," *Gonzalez-Roque*, 301 F.3d at 47-48, a point Respondents concede, *see* Opp'n at 10. Therefore, the Court concludes that Petitioner is excused from exhausting administrative remedies before seeking relief in this Court.

## C. Due Process

The Court now turns to whether ICE's detention of Petitioner violates his due process rights. The *Mathews* test governs this inquiry. *See Velasco Lopez*, 978 F.3d at 851 (applying the three-factor balancing test outlined in *Mathews v. Eldridge*, 424 U.S. 319 (1976), to determine the adequacy of process in the context of civil immigration confinement). The determination of what procedures are required under the Fifth Amendment requires consideration of: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

The first prong of the *Mathews* test, the private interest affected by the official action, favors Petitioner. Petitioner invokes "the most significant liberty interest there is—the interest in

being free from imprisonment." *Velasco Lopez*, 978 F.3d at 851 (citing *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)).

The second prong of the *Mathews* test, the risk of erroneous deprivation of that interest through the procedures used, presents a closer question but also favors Petitioner. The parties disagree as to whether an individualized determination was made. Petitioner claims an individualized determination was *not* made, *see* Pet. ¶¶ 15-26, while Respondents contend an individualized determination *was* made, *see* Letter from Respondents to the Court at 1 (Apr. 20, 2026), Dkt. 13 ("Suppl."). In support of their position, Respondents point to several form documents, principally a Form I-213, Record of Deportable/Inadmissible Alien, dated March 19, 2026, the date of Petitioner's arrest. *See* Suppl. at 1. That document lists Petitioner's state-court guilty plea for driving while intoxicated in a short section entitled, "Criminal History." *See* Record of Deportable/Inadmissible Alien at 3, Dkt. 13-2; *see also id.* at 2 (noting the conviction again in a sentence toward the bottom of the page). "[M]ere awareness of pending criminal charges is not," however, "sufficient to constitute an individualized determination as to [Petitioner's] flight risk or danger to the community." *Garcia Montalban v. Genalo*, 26 Civ. 1808, 2026 WL 787846, at *5 (S.D.N.Y. Mar. 20, 2026); *see also Kelly v. Almodovar*, 25 Civ. 6448 (AT), 2025 WL 2381591, at *3 (S.D.N.Y. Aug. 15, 2025) ("But the mere 'review' of a RAP sheet is not tantamount to an individualized assessment of a suspect's flight risk or dangerousness."). As discussed in prior decisions before this Court, as well, the denial of bond by the IJ because Petitioner, rather than Respondents, was unable to carry the burden of showing that he was neither dangerous nor a flight risk "seriously impacted his ability to secure bail" due to the "informational asymmetry" caused by Petitioner's confinement. *Singh v. Francis*, 26-CV-00344 (OEM), 2026 WL 507890, at *5 (E.D.N.Y. Feb. 24, 2026); *see also Velasco Lopez*, 978 F.3d at 852-53. Respondents have not

therefore shown that ICE engaged in the required deliberative process during the initial decision to strip Petitioner of his liberty interest, which was compounded by the procedures underpinning Petitioner's confinement in relation to the bond hearing. The risk of erroneous deprivation is significant.

The final *Mathews* prong, the Government's interest, also favors Petitioner. "[T]he Attorney General's discretion to detain individuals under 8 § U.S.C. 1226(a) [sic] is valid where it advances a legitimate governmental purpose," such as "ensuring the appearance of aliens at future immigration proceedings" and "preventing danger to the community." *Valdez*, 803 F. Supp. at 218 (first quoting *Velasco Lopez*, 978 F.3d at 854; then quoting *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001)). Here, however, there is nothing in the record to suggest that Petitioner is a flight risk. *See* Pet. ¶¶ 12-27; Opp'n at 5. There is also nothing proffered in the record to suggest that Petitioner is a danger to the community beyond one, nonviolent traffic violation. Pet. ¶ 21; Opp'n at 5. The record indicates that Petitioner has otherwise lived in the United States for approximately two-and-a-half years without incident. Pet. ¶¶ 12-27. Therefore, Respondents have failed to show a significant interest in his continued detention.

Taken together, Petitioner's ongoing detention violates his due process rights. *See Valdez*, 803 F. Supp. 3d at 219; *Lopez v. Sessions*, 18 Civ. 4189 (RWS), 2018 WL 2932726, at *15 (S.D.N.Y. June 12, 2018). Given the deprivation of Petitioner's liberty, the absence of any deliberative process prior to or contemporaneous with the deprivation, and the statutory and constitutional rights implicated, a writ of habeas corpus is the only form of relief and the most appropriate remedy. *Valdez*, 803 F. Supp. 3d at 219; *Lopez*, 2018 WL 2932726, at *15.

**CONCLUSION**

For the foregoing reasons, the Petition is granted. Respondents are ordered to provide Petitioner with an individualized bond hearing before an Immigration Judge by May 1, 2026. At that hearing, the Government shall bear the burden of demonstrating, by clear and convincing evidence, that Petitioner is a danger to the community or a flight risk. *See Velasco Lopez*, 978 F.3d at 855-56. In the event Respondents fail to provide Petitioner with such a bond hearing by May 1, 2026, Respondents are ordered to release Petitioner immediately. By May 4, 2026, Respondents shall certify compliance with this order by filing on the docket and noting specifically that Petitioner has been released.

The Clerk of Court is respectfully directed to enter judgment in accordance with this order and close this case.

SO ORDERED.

_____/s/_____
ORELIA E. MERCHANT
United States District Judge

April 22, 2026
Brooklyn, New York